REYNOLDS, assignee, vs. SIMPSON & LEDBETTER.

1. One question in the case being whether goods had been furnished to a third party on the credit of the defendant, or whether the defendant was a mere surety of the third party, without any written contract, there was no error in allowing the vendors to testify to whom the credit was given, they having stated at the same time all the circumstances attending the transaction.

2. If the effect of an arrangement between the defendant and the vendors of goods was an agreement that the defendant would be responsible or would pay for goods to be sold by the vendors to a third person, and for which such third person also was to be responsible, then the defendant would be a surety for him, and the contract not being in writing, would be void and not binding on the defendant.

(a.) The finding of the jury on this question was supported, if not required, by the evidence.

3. Where a banking corporation acquires possession of property, either by a lien thereon or by the purchase of the same, for the payment of a debt due to it, and expends money on it, or furnishes supplies either for its preservation or to carry on the business in which such property is employed, with a view to rendering it productive, in order to satisfy the debt the bank holds against the

former owner of the property, it is not chargeable with exceeding its corporate powers by engaging in a business beyond the scope and purpose of its creation.

(a.) Whether the bank used its power of collecting its debts as a pretext for embarking in a business foreign to that for which it was created and which it was authorized to conduct, or whether it made a proper use of it in furtherance of its legitimate business, was fairly submitted to the jury, and their verdict is upheld by the evidence.

4. He who alleges error must show error. He must plainly specify, not only the decision complained of, but must, with like particularity, allege the error claimed to exist therein. A general and uncertain suggestion in argument of errors in calculation will not cause a reversal.

March 10, 1885.

Evidence. Debtor and Creditor. Principal and Surety. Statute of Frauds. Banks. Corporations. Practice in Supreme Court. Before Judge FAIN. Floyd Superior Court. September Adjourned Term, 1884.

Reynolds, as assignee of the Bank of Rome, brought suit against Simpson & Ledbetter for $1,551.86, paid out by the bank on their checks. The defendants pleaded as a set-off certain protested drafts of the bank, and an account for goods furnished, on which there was a balance of $1,519.27. The contest was over this account and the liability of the bank thereon. The evidence for the defendants on this subject was, in brief, as follows: One Harrison leased certain iron works in Alabama, known as the Stonewall Iron Works, and one Langdon Bowie was placed in charge as general manager. Much of the pig-iron produced by these works was shipped to the Vulcan Iron Works, of Chattanooga, in which Harrison was interested. In 1880, both Harrison and the Vulcan works failed, and Harrison made an assignment. Bowie had drawn large drafts on the Vulcan Iron Works, and they had been discounted by the Bank of Rome. After the failures above stated, Harrison and Bowie were anxious to secure the bank, and at Bowie's suggestion, the bank

sued out an attachment and levied on all the personal property in Alabama and garnished Bowie. Bowie told Samuels, the president of the bank, that if he could work off the raw material on hand, convert it into pig-iron and sell it, the indebtedness to the bank could be paid, but that in order to do this, it would be necessary to have supplies, and it was agreed that supplies should be furnished to the extent of about $8,000. Bowie had previously had an account on the books of Simpson & Ledbetter, and at that time there was due $222.94 on his account. Samuels, as president of the bank, went to Simpson & Ledbetter and told them to let Bowie have goods until he should instruct them otherwise, and the bank would pay for them. They accordingly sold the goods to Bowie. Both testified that they gave the credit to the bank. The directors and a majority of the stockholders of the bank knew of and approved Samuels's action. This new account began to run from June 30, 1880. On July 28, the former account of Bowie was paid. Samuels was kept advised of the status of the account, and the overdrafts of defendants were allowed to be drawn on the basis of it. At one time, Samuels declined to be responsible further, and the defendants refused to ship goods to Bowie, but Samuels changed his instructions, and the goods were shipped. The effort to realize on the debt did not prove profitable, not even paying for the amount advanced. Subsequently the bank failed and made an assignment to Reynolds.

The plaintiff, partly by cross-examination and partly by testimony introduced by himself, showed that the account sued on followed on the books of the defendants the former account of Bowie, manager; that the goods in the present account were billed to Bowie and were charged on the blotter and journals to Bowie or Bowie, manager; that they were entered on the ledger to Langdon Bowie, manager Stonewall Iron Co., and above this heading in the blank space at the top of the ledger was written,

" Bank of Rome, per;" that neither of the defendants, could state or would express an opinion as to when this entry was made, and the book-keeper who made it was dead. The bank pass-book of the defendants also was introduced, showing large and varying overdrafts at different times during the continuance of the account sued on.

There was other testimony and parol proof of accounts, which it is unnecessary to detail.

The jury found for the defendants. The plaintiff moved for a new trial, on the grounds stated in the decision, which was overruled, and he excepted.

DABNEY & FOUCHE, for plaintiff in error.

UNDERWOOD & ROWELL, for defendants.

HALL, Justice.

This was a suit by the assignee of the Bank of Rome against Simpson & Ledbetter, upon an account for money paid on their checks, aggregating the sum of $1,551.86, besides interest from March 24th, 1881.

Defendants pleaded, as a set-off against this demand, the protested drafts of the bank, amounting to $176.88, and also an open account running from June 30th, 1880, to February 17th, 1881, amounting, after the allowance of credits to which the bank was entitled, to $1,519.27. Each party proved their claims and two juries found concurrent verdicts for the defendants. On the return of this last verdict, the plaintiff moved for a new trial :

(1.) Because said verdict is contrary to the evidence, and the strong and decided weight of the evidence, and is without evidence to support it.

(2.) Said verdict is contrary to law.

(3.) Because the court, during said trial, allowed the witnesses, W. P. Simpson and A. W. Ledbetter, each, to testify that the goods furnished to Bowie, and the account

for which is plead as a set-off in said case, were so furnished solely on the credit of the Bank of Rome, and that in so furnishing said goods they gave credit solely to the Bank of Rome,—the plaintiff objecting thereto, on the ground that the question to whom credit was given, in making said sale, was a question of law to be decided from the facts and terms of the trade and transaction, as the same might be shown, and the question which the jury were to decide under the charge of the court.

(4.) Because the court did not give to the jury, without qualification, the following charge, which plaintiff requested in writing, to-wit: " A corporation cannot engage in any other business, nor embark its capital, or any part of its means, in any other enterprises than those for which it was created and specified in its charter; and any act or contract of its president, or any of its officers, for such purpose is unauthorized and void, as an act of the corporation, and is not binding on the corporation." The court gave the charge as requested, but added these words: " The court charges you that that is the law as an independent proposition. If it took up an independent business and ran it as a part of the banking business, it would be without authority of law and .*ultra vires.*" To which addition the plaintiff then and now objects.

(5.) Because the court refused to give to the jury the following charge, as requested in writing by plaintiff's attorney, to-wit: " If the effect of the arrangement between Samuel, as president of the bank, and Bowie, as manager of the iron works, was to make Bowie the agent of the bank for the purpose of running the iron works for the bank, or for the supposed benefit of the bank, then such arrangement would be in effect embarking the means of the bank in the business of operating iron works, and would be beyond the corporate power of the bank, a misapplication of its means, and nothing that Samuel did under it would be binding on the bank."

(6.) Because the court refused to give the following

written charge, requested by plaintiff, viz.: "If the effect of the arrangement between Samuel, as president of the bank, and Simpson & Ledbetter, was to make the bank a direct purchaser of the supplies furnished by Simpson & Ledbetter to Bowie for the purpose of running the iron works, then the purchase by the bank of such supplies for such a purpose would be a misapplication of the means of the bank, and a breach of trust by the bank or its officers, and the contract made by Samuel for the purchase of such goods would not be binding on the bank. Especially would this be true if Simpson & Ledbetter knew the purpose for which the goods were so purchased."

(7.) Because the court charged the jury as follows, viz.: "If the bank was engaged in a banking business, following their legitimate business, and it should become necessary in transacting the business which they were authorized to transact, loaning money and receiving securities, the law would allow them to make collections; and if it was necessary for the bank authorities to do something outside of the banking business, taking liens and collecting, etc.,—if they took charge of property, and it is proper, or they think it is proper, and if it is for the benefit of the business, or they think so, and spend money to secure the lien, or prosecute the lien to its collection, then the court charges you that they may make such contracts, and it would not be without authority of law."—Plaintiff insists that said charge was error and was not justified by the facts of the case.

(8.) Because the jury found contrary to the following charge of the court, viz.: "If the effect of the arrangement between Samuel and Simpson & Ledbetter was an agreement that the bank would be responsible, or would pay for goods to be sold by Simpson & Ledbetter to Bowie, and for which Bowie was also to be responsible, then the bank would be a surety for Bowie, and the contract, not being in writing, would be void and not binding on the bank."

(9.) Because the jury found contrary to the following charge of the court, viz.: "The test which will decide whether the contract of the bank was that of a principal or that of a surety for Bowie, is whether Bowie was also liable for the goods, and received them and the benefit. If Bowie or his iron works could have been sued by Simpson & Ledbetter and made liable for the goods, as well as the bank, then the liability of the bank would be that of a surety."

This motion was overruled by the court, and plaintiff excepted to that judgment and brings it here for review.

1. Whether the credit was given to the bank or to Bowie, it seems to us, was a question of fact to be passed upon by the jury, under the instructions of the court, and that it was competent for the defendants, who were sworn as witnesses in the case, to testify to whom the credit was given, they having stated at the same time all the circumstances attending the transaction; this was the statement of a fact, and not a conclusion of law or a deduction from the facts testified to by them or other witnesses in the case.

2. The court, in the charge set out in the 8th and 9th grounds of the motion for the new trial, gave the correct rule for determining whether the defendants furnished the goods to Bowie upon the credit of the bank, or whether the bank only undertook to become responsible to them for the same as the surety of Bowie; *i. e.*, whether the undertaking of the bank was an original or a collateral undertaking.     70 *Ga.*, 52, *Baldwin vs. Hiers*, 73 *Ga.*, 739.

The finding of the jury as to this fact was supported, if not required, by the evidence, and was therefore not contrary to the charge given by the court.

3. Where a banking corporation acquires possession of property, either by a lien thereon, or the purchase of the same, for the payment of the debt due to it, and expends money on it, or furnishes supplies either for its preservation or to carry on the business in which such property is

Reynolds, assignee, vs. Simpson & Ledbetter.

employed, with a view of rendering it productive, in order to satisfy the debt it holds against the former owner of the property, it is not chargeable with exceeding its corporate powers by engaging in a business beyond the scope and purpose of its creation. It is merely exercising a power which is common to all corporations ; it can purchase and hold such property, real or personal, as is necessary to the purposes of its organization, and can perform all such acts as are necessary for the legitimate execution of such purposes. Code, §1679. It has the power to sue, to make and enforce contracts in relation to its authorized business; but why give it this power, if it is denied the means of rendering it effectual and valuable ? Whether this banking corporation used this power of collecting its debts as a pretext for embarking in a business wholly foreign to that for which it was created, and which it was authorized to conduct, or whether it made a ligitimate and proper use of it in furtherance of its ligitimate business, was a question which was fairly submitted to the jury and upon which they have passed, upon what appears to be sufficient evidence to uphold their finding.

4. After this case was argued in this court, we were furnished with an additional brief by the plaintiffs in error, claiming that, under the proof had on the trial, there should have been a verdict in favor of the plaintiff, after allowing the set-off pleaded by defendants for one or another of three amounts, viz: $15.72 or $47.91 or $270.85; they are altogether uncertain which of these amounts should have been allowed. The basis of this calculation is not manifest; there is too much uncertainty attending the result; if submitted to the jury, they found against it, and error in their finding is not specifically alleged. The suggestion seems to have been made for the first time to this court, and it is scarcely necessary to say that we have no authority to examine or correct any other errors than those committed by the lower court. It has often been held that those who charge error must show it.

The statute declares that they must plainly specify, not only the decision complained of, but must with like particularity allege the error claimed to exist therein. We shall not engage in a voyage of discovery to find and expose such errors; this is no part of our duty; in fact, we should exceed the bounds of propriety were we to attempt it.

Judgment affirmed.