**SABIN MEYER REGIONAL SALES CORPORATION, Plaintiff,**

v.

**CITIZENS BANK, a State Chartered Bank, and Hollis Q. Lathem, Defendants.**

**Civ. A. No. C79–570A.**

United States District Court, N. D. Georgia, Atlanta Division.

Dec. 5, 1980.

Robert J. Kaufman, Schwall & Heuett, Atlanta, Ga., for plaintiff.

Daniel J. Perka and Franklin R. Nix, Alston, Miller & Gaines, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff brought this case against defendant Citizens Bank and defendant Hollis Q. Lathem, under the court's diversity jurisdiction. 28 U.S.C. § 1332. In June, 1977, plaintiff received five checks, each in the amount of $20,000.00 drawn on the account of Tress Enterprises, Inc., with defendant Citizens. As a result, plaintiff released sea food it had been holding for Tress. Prior to that release, plaintiff's president, Sabin Meyer, spoke to defendant Lathem, the executive vice president of defendant Citizens, and was allegedly assured that the Tress account contained and would contain sufficient funds to cover the five post–dated checks when presented. When the checks were presented, they were returned because insufficient funds existed in the Tress account with defendant Citizens. A similar series of conversations took place between defendant Lathem and Robert Meyering, the assistant treasurer of Chase Manhattan Bank, concerning whether or not sufficient funds would exist in the Tress account to cover the checks when presented. A second attempt was made to present the checks to defendant Citizens, but the checks were again rejected since the Tress account contained insufficient funds to pay them.

The sequence of events and transactions involved in this litigation is actually very complex, but the facts material to resolving defendants' pending motion for summary judgment are quite simple. Checks numbered 178, 179, 180, 181, and 182 were drawn by Tress on Tress's account with defendant bank. The checks were for $20,-000.00 each, a total of $100,000.00. No written guaranty for payment of the checks was ever made by defendants.

The theories advanced by plaintiff in this case are somewhat confused. The court is nevertheless able to dispose of the pending motion by addressing each of plaintiff's theories, as interpreted by both parties. First, the court will address whether defendants are liable on the checks themselves. The court will then address plaintiff's theory of a breach of an oral guaranty, breach of a contract of assignment, fraud, conversion, estoppel, and negligence. Ga.Code Ann. § 109A–3–409.

■ Whether or not defendants are liable on the checks themselves is governed by Ga.Code Ann. § 109A–3–409(1), which states:

A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

If defendant bank has not, as a matter of law, accepted the checks in question, it cannot be liable on the checks themselves. What constitutes acceptance is governed by statute. "Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification." Ga.Code Ann.

§ 109A–3–410(1). The facts of this case reveal that there has been no written acceptance. Indeed, the checks at issue were dishonored within the meaning of section 109A–3–507(1)(a) of the Georgia Code since they were returned prior to the bank's deadline of midnight of the next banking day following the banking day on which the checks were received. Ga.Code Ann. § 109A–4–104(1)(h). *See also* Ga.Code Ann. §§ 109A–3–102(3) and 109A–4–301(4).

Therefore, since the checks were not accepted within the meaning of the Georgia Code by defendant Citizens, defendant Citizens cannot be liable on them. Of course, the same reasoning applies to defendant Lathem, and he is also not liable on the checks themselves.

■ Furthermore, under any construction of the oral conversations various agents of plaintiff had with defendant Lathem as a contract between plaintiff and either or both defendants, the court cannot enforce the contract that may have resulted. If the conversations are to be construed as an oral acceptance of the drafts, the court cannot enforce the acceptance since acceptance must be in writing. Ga. Code Ann. §§ 109A–3–410(1) and 20–401(8). If the conversations are construed as a guaranty, they are also unenforceable. Ga. Code Ann. § 20–401(2). The same reasoning requires the court to find that, construed as a contract of suretyship, the conversations cannot be enforced. *Reynolds v. Simpson & Ledbetter*, 74 Ga. 454 (1885). As an oral certification of the five checks, the conversations still fail to yield an obligation binding on defendants. Since certification of payment is the same as acceptance, it is not binding unless in a writing signed by the acceptor or certifying party. Ga.Code Ann. §§ 109A–3–410(1) and 109A–3–411(1).

In the alternative, the court finds that a contract of guaranty arising from the conversations is illegal and unenforceable. Regulations of the Federal Deposit Insurance Corporation found at 12 C.F.R. § 332.1 forbid member banks to execute contracts of guaranty or surety. Section 20–501 of the Georgia Code provides that a "contract to do an . . . illegal thing is void." The statute does not make an illegal contract voidable at the option of the party seeking to enforce the contract. Rather, an illegal contract is utterly void. Since the pertinent legal authority is equally available to both parties to the contract, such a result is not unjust in this case. To enforce the purported oral guaranty contract would be a violation of public policy that this court will not countenance.

■ Another contractual theory arises under plaintiff's characterization of the subject checks as an assignment. Georgia law recognizes implicitly that a check may, in certain special circumstances, constitute an assignment of funds. Ga.Code Ann. § 109A–3–409(1) and U.C.C. § 3–409, comment 1. The sufficiency of given facts to establish that a check should operate as an assignment is governed by Georgia case law, and sufficient facts are hard to attain. The court finds that the facts in this case, accepting the contentions of the party opposing summary judgment as true, are insufficient to establish an assignment.

> It is well settled in this State . . . that an unaccepted check drawn in the usual form, not upon any particular fund, or not using words indicating a transfer of the whole or any part of the amount standing to the credit of the drawer, does not of itself amount to an assignment of the money to the credit of the drawer.

*McIntire v. Raskin*, 173 Ga. 746, 748, 161 S.E. 363, 364 (1931). The checks in the present case fall within the exclusion of *McIntire*. The checks in this case were in the usual form, were not accepted by the drawee, and had no words to indicate an assignment. Furthermore, and most important to the resolution of this issue, they were not drawn upon any particular or special fund within the meaning of cases such as *Mid–Continent Casualty Co. v. Jenkins*, 431 P.2d 349 (Okl.1967), the case cited by plaintiff in support of its assignment theory.

By enacting the Uniform Commercial Code, the official text of which only impliedly allows raising a check to the status

of an assignment, the Georgia General Assembly did not intend to displace existing state law on what facts were sufficient in order to interpret a check as an assignment. Since certification provides an easy and clear procedure under the Uniform Commercial Code to assure payment of a check, the court does not believe that raising a check to the status of an assignment should be easier under the present law than it was under the law prior to Georgia's enactment of that Code. Therefore, the difficult standard of *McIntire* applies. Ga.Code Ann. § 109A–1–103.

■ Plaintiff also advances a theory of common law fraud. There are two possibilities for identifying the actionable misrepresentation, assuming such a misrepresentation occurred, and both possibilities relate to the amount of money in Tress's checking account with defendant Citizens. Either the misrepresentation was as to the drawer's present balance in the checking account of Tress with defendant Citizens or the misrepresentation was as to the drawer's future balance in that account.

There is no suggestion in the record that the misrepresentation was as to the balance in the checking account at the time of the conversations with defendant Lathem. Although plaintiff makes such an assertion in its brief, its citation to the affidavit of Larry L. Ruff contributes to the inescapable conclusion that the only representations were as to future events. Paragraph 8 of that affidavit states that the representation was that the five checks "*would be* personally paid notwithstanding the fact that there were insufficient funds in the account." (Emphasis added.) In addition, the depositions of plaintiff's own witnesses confirms that the only representations made by defendant Lathem, accepting plaintiff's allegation that they were indeed made as true, relate to the future. Deposition of Sabin Meyer at 90–91, 100–02; Deposition of Robert Anthony Meyering at 42–44, 56.

All representations made to which the court's attention has been called, then, were as to future events, and even if false, are not actionable under Georgia law as fraud. *Cosby v. Asher*, 74 Ga.App. 884, 41 S.E.2d 793 (1947); *Rogers v. Sinclair Refining Co.*, 49 Ga.App. 72, 174 S.E. 207 (1934). The facts in the present cases amount to nothing more than a prediction. Given that plaintiff could have easily assured that the checks would be paid by insisting on certification, the court finds that prediction is too ephemeral a basis on which to recover on a theory of fraud.

■ Plaintiff also asserts a theory of estoppel as a cause of action. Estoppel, however, is not a cause of action under Georgia law. *Hood v. Duren*, 33 Ga.App. 203, 125 S.E. 787 (1924). Plaintiff apparently misunderstands the nature of the equitable doctrine of estoppel. Estoppel may be used to prevent a party from denying at the time of litigation a representation that was made by that party and accepted and reasonably acted upon by another party with detrimental results to the party that acted thereon. The doctrines of estoppel "are primarily negative in their operation against the party making the statement or admission, rather than creative of any new rights in the opposite party." *Id.* at 203, 125 S.E. at 787. Without some proper legal cause of action, establishing all the elements of equitable estoppel will not entitle plaintiff to relief.

■ Finally, the court turns its attention to plaintiff's theory of negligence. Since defendant Citizens, as drawee of a check, owes no duty to plaintiff, as presenter of a check, in the absence of acceptance or certification, *Stewart v. Citizens & Southern National Bank*, 138 Ga.App. 209, 225 S.E.2d 761 (1976), the court finds that defendant Citizens has not negligently treated the check itself. Nor was defendant Citizens negligent in failing to issue a federal operating circular as plaintiff argues. Since Citizens is not a Federal Reserve Bank, it is not required as a matter of law to issue such a circular. 12 C.F.R. § 210.65. Since the check was stamped as having been refused acceptance and was returned to the Federal Reserve prior to defendant Citizen's midnight deadline, a timely notice of

dishonor was given in accordance with Ga. Code Ann. § 109A–3–508. Therefore, defendants were not liable for failing to do so.

■ Since under Georgia law plaintiff cannot prevail on any of the theories discussed above, the court GRANTS defendants motion for summary judgment as to those theories. The theory that defendants were negligent in reporting the status of the Tress checking account with defendant Citizens, however, remains. Though defendant Citizens has no duty to set aside funds to cover the checks once a representation has been made, *C. & S. National Bank v. Levitz Furniture,* 147 Ga.App. 295, 248 S.E.2d 556 (1978), the bank and its agents must exercise due care in reporting on a customer's account if they choose to so report. A factual issue remains as to whether defendant Citizens or defendant Lathem told plaintiff that there would be funds in the Tress checking account by the time the five checks were presented for payment, and whether, if so, they failed "to conform to the legal standard of reasonable conduct in the light of the apparent risk." W. Prosser, *Handbook of the Law of Torts* § 53 (4th ed. 1971). The fact that defendant Citizens was in the process of reviewing a loan application, which if approved would have covered the five checks, lends credence to this theory. There nevertheless remain grave problems with establishing the theory, and it may be necessary to prevent the issue from ultimately going to a jury or even to trial. The court is reluctant, however, to remove the issue from a jury's consideration at this time, since there is some possibility that plaintiff may be able to establish the elements of negligence and recover on that cause of action. The issue, then, of whether or not defendants were negligent in reporting the status of the Tress account is the sole issue remaining in this case.

Therefore, defendants' motion for summary judgment is GRANTED in part and DENIED in part.

So ORDERED.