**Josephine RAY and Delia M. Swift**

v.

**Margaret HECKLER, Secretary of Health and Human Services.**

**Civ. No. C79–1381.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 7, 1986.

---

Kenneth G. Levin, Atlanta Legal Aid Society, Inc., Atlanta, Ga., for Josephine Ray.

Mary Walton Whiteman, Worth, Whiteman & Whiteman, Decatur, Ga., for Delia Swift.

Nina Loree Hunt, Asst. U.S. Atty., James N. Stephens, Acting Regional Atty., Dennis R. Williams, Asst. Regional Atty., Dept. of Health & Human Services, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

These competing claims for social security widow's benefits are before the court on Plaintiff Delia Swift's motion for reconsideration of this court's April 30, 1985 order. The case is also before the court for findings and conclusions on Josephine Ray's claim that Delia Swift is equitably estopped to seek benefits.

The court has reconsidered its earlier finding and agrees with Plaintiff Delia Swift that only the Defendant should be penalized for Defendant's failure to follow the court's instructions. Accordingly, the order of April 30, 1985 is hereby MODIFIED, so that the court's conclusion as modified is: The court therefore ORDERS that Defendant pay Social Security benefits to Plaintiff Josephine Ray.

The court has further determined on the merits, based on a review of the entire record now before it, that Josephine Ray, not Delia Swift, is entitled to Social Security benefits as the widow of Edward Ray under the criteria established by 42 U.S.C. § 416(h)(1)(B).

Although the record herein contains relatively few material factual disputes, the passage of time and the present size of the file make it helpful to set out the facts as a whole again. The following constitutes the undisputed facts or prior findings of the trier of fact unless noted otherwise.

Edward Ray ceremonially married Delia Ingram in March, 1930. Edward left Delia, probably in 1931, but possibly later. Delia bore Edward no children. The better interpretation of disputed facts (discussed in detail below) is that after the separation Delia approached Edward, told him that she was taking steps to divorce him, handed him some papers and told him they were divorce papers he needed to sign. Edward complied by marking an "X" in the signature space. It is undisputed that he was completely illiterate, and that his signature typically consisted of an "X."

Unbeknownst to Edward, Delia never followed through on the divorce.

Edward Ray ceremonially married Josephine Hester in November, 1936. When Edward married Josephine, he believed that he was free to remarry. He told Josephine he was divorced. Josephine believed him, having no reason to believe otherwise.

Edward and Josephine Ray had five sons and one daughter during the course of a stable forty-one year marriage. It is undisputed that the Rays were a close family, active in church affairs and that they enjoyed a good reputation in the community. Throughout this time, Edward worked and contributed to Social Security.

Delia Ray and Rubin Swift commenced a relationship in 1943. They continuously lived together and held themselves out as Mr. and Mrs. Rubin Swift for 19 years. Four children were born of that relationship. Although Rubin Swift worked, and earned enough money to be able to leave a home and a small annuity to Delia and their children after his death, he did not

accrue enough quarters working in employment covered by Social Security to become entitled to any benefits.

In 1962 Rubin Swift died. Following that, Delia Swift continued to refer to herself as "Mrs. Delia Swift," and has done so to this date.

In 1971 Edward Ray became ill. He decided to take early retirement at 62 so as to begin receiving Social Security retirement benefits. Applications, signed by him and Josephine Ray, were filed with the Social Security Administration in 1971. The applications were for (a) early retirement benefits for Edward, (b) child's benefits for their minor child and (c) wife's benefits for Josephine as spouse of Edward and custodian of their minor child. The application signed by Edward states that he had had a prior marriage to Delia, which terminated in divorce.

The Social Security Administration asked Edward for proof of his divorce from Delia. He contacted her and learned that the divorce never had occurred. The Social Security Administration advised the Rays that if Josephine were to be paid any benefits on Edward's account, it would be necessary to obtain a statement from Delia renouncing her right to collect benefits as Edward's wife. Shortly thereafter, Edward brought Josephine a hand-written letter signed by "Mrs. D.M. Swift" which states,

"If Mr. Eddie Ray wish to get a devorce [sic] he may. I will not try to stop the devorce in any way. If there is an retirement pention [sic] of any kind I will not stand in the way of his other wife."

The address stated on the letter was 349 6th Avenue, Scottdale, Georgia. The letter closes with a P.S. "If you wish to contact me, you can reach me at the above address. Phone No. 377–2103."[1] The address and phone number shown were Delia Swift's. The Rays presented this letter to Social Security. Shortly after that they both began receiving Social Security benefits. The Administrative Law Judge ("ALJ") ex-

pressly credited Josephine's testimony that she believed the 1971 letter was genuine.

In response to the specific questions she was asked at the original administrative hearing in this matter, Delia Swift testified she had never seen the 1971 renunciation letter until the very day of the hearing, that the handwriting on it was not hers and that the signature on it was not hers. (Transcript of 1979 hearing, pp. 71–72). She was not asked, and she did not volunteer, whether Edward or anyone else had ever asked her to relinquish her claim to the benefits, or whether she had agreed to do so. Her denial was literally as stated.

Delia Swift admitted that in 1971 she had been contacted by a representative of Social Security. She stated, however, that this representative had called only to inquire whether she had any objection to Edward Ray's taking early retirement, and whether she would sign a card evidencing her consent. No "card" was presented at the hearing or offered in evidence. Mrs. Swift was, however, presented with a copy of a form from Edward Ray's social security file which she was asked to identify. The form is entitled "Statement of Claimant or Other Person," and is signed in a space on the back side "Mrs. Delia M. Swift." The form is not dated. The filled-in text, which is typewritten and which appears on the front side of the form states the following:

I had planned to divorce Eddie Ray and I had him sign some papers, but I didn't complete the divorce proceedings. I didn't contact him to advise him that the divorce did not go through. I feel sure he married his present wife in good faith.

When Mrs. Swift was handed this document by her lawyer for identification purposes, she was first directed to the signature on the back and asked if she could identify it. She stated that signature appeared to be hers. She was then directed to the typewritten text on the front, at which time she denied ever having given such a statement to the Social Security Administration. Specifically she testified:

1. This document appears as Exhibit 25 in the     administrative record.

A. No, I haven't. I haven't even went to a lawyer no kind of way to get a divorce, and I haven't made that kind of statement to no Social Security.

Transcript, p. 73.

Delia Swift's refutation of the "Statement of Claimant or Other Person" is contradicted by another form in Edward Ray's social security file. This latter form is entitled "Report of Contact," is dated 11/24/71, and is signed by E.B. Eakins, an employee of the Social Security Administration. The handwritten text of this form states as follows:

I telephoned Delea Mae Swift re her relationship to W/E.[2] She advised that she planned to divorce W/E and had him sign papers, but she found it to be expensive and didn't get the divorce. She said she thought W/E believed she divorced him and she never told him any different. W/E therefore, did marry his present wife in good faith.

After the original administrative hearing, the ALJ sent various documents and papers signed either "Mrs. D.M. Swift" or "Delia M. Swift" to the Social Security Administration's Document Analysis Laboratory for expert handwriting comparison. The expert's written conclusion, which is in the record, is ambiguous. It is either that the signature on the 1971 renunciation letter is not Delia Swift's or that he could not tell one way or the other.

Edward Ray's health declined further after his retirement. He had various health problems, but eventually died of lung cancer in 1977. Throughout the period preceding his death, until the instant social security dispute arose, Josephine Ray genuinely believed that Delia Swift had legally renounced all claim to Edward Ray's social security account, as she and Edward had done exactly what the Social Security Administration had told them to do to insure this benefit.

When Edward Ray had been dead for three weeks, Delia Swift applied for social security benefits as his widow. Ten days after that, Josephine Ray made her application for benefits as Edward Ray's widow.

In his decision of May 15, 1979, the ALJ determined that because Edward and Josephine Ray never entered into a valid and binding marriage, that Josephine Ray's claim for benefits should be denied and Delia's claim honored. He made no findings of fact or conclusions of law on Josephine's claim that Delia Swift had renounced her widow's benefits in 1971. No credibility findings were made.

The ALJ's decision was appealed to this court. In an order entered November 5, 1981, the case was remanded for further findings, including a finding as to the authenticity of the 1971 renunciation letter.

The ALJ held a further evidentiary hearing on August 17, 1982. At that hearing both Josephine Ray and Delia Swift testified again. The questioning of Josephine centered on exactly how ill Edward Ray had been after his retirement and at what point he had become bedridden. Josephine was unable to supply dates, and only testified generally that at some point Edward had had a lung removed, that he had been in a convalescent home for some time, and that he finally died at Grady Hospital.

Delia Swift was then called for cross examination by Mrs. Ray's attorney. He asked her to examine two sequential signatures in the visitor's book from Edward Ray's funeral, namely, "Mrs. Linda Swift Ray Pearson" and "Mrs. Delia M. Swift." The two signatures are in similar handwriting. Mrs. Swift stated that she and her daughter had gone together to the funeral home, but that she (Mrs. Swift) had not signed the visitor's book. She said the signature "Mrs. Linda Swift Ray Pearson" looked like her daughter's signature, though she wasn't sure. She said neither she nor Linda had attended Edward Ray's funeral.

Noting the similarity between the signatures "Delia M. Swift" and "Linda Swift Ray Pearson" on the visitor's book and "Mrs. D.M. Swift" on the renunciation let-

---

2. An apparent abbreviation for "wage earner."

ter, the ALJ again sent documents to the Documents Analysis Laboratory for review. The expert's written report dated February 25, 1983, which is contained in the record, states: "Similarities of handwriting characteristics lead to the conclusion that the person making the signature appearing on Exhibit B–2 probably also made the questioned signatures appearing on Exhibit A." In other words, the expert's opinion was that Mrs. Swift's daughter Linda Pearson most likely made the signature on the renunciation letter.

Mrs. Swift was not asked either by her lawyer or by Mrs. Ray's lawyer whether she had any knowledge concerning her daughter's giving Edward Ray a renunciation letter. The only question approaching this subject came from the ALJ:

Q. Did your daughter write the letter requested?

A. No, she didn't.

Transcript, p. 52, 1982 hearing. There is absolutely no testimony in the record as to what factual basis, if any, Mrs. Swift had for the assertion that her daughter did not write the letter. She was never asked whether she had ever discussed that subject with Linda.

After the remand hearing, the ALJ entered a written decision on April 29, 1983. He made a finding of fact that the renunciation letter had not been personally written by Delia Swift, crediting Mrs. Swift's testimony in that regard. He rejected Josephine Ray's argument that Edward Ray's failure to divorce Delia after 1971 was excusable. Specifically, the ALJ found that at least prior to October of 1974, Edward's health would have permitted him to seek a divorce from Delia. He discredited Josephine's testimony that she feared a belated divorce action might discredit the Ray family in the eyes of the community. In a memorandum dated April 29, 1983, intended to supplement the decision, the ALJ found that the fact that Linda Pearson had signed the visitors book at the funeral parlor for her mother indicated only a limited agency. He further found that Josephine's continuing to reside with Edward once she

knew her marriage was bigamous meant "her hands cannot be said to be clean as to equity and equitable doctrines."

The ALJ's 1983 decision only peripherally touched on the question whether Delia Swift had authorized renunciation of her social security benefits. He noted the expert opinion regarding the signature on the 1971 letter, but made no finding of fact as to whether Mrs. Pearson had signed Mrs. Swift's name, simply stating "... I emphasized [sic] that the word 'probably' was used."

The instant case then went to the Appeals Council. The Appeals Council considered and approved the ALJ's finding that Edward had adequate opportunity to divorce Delia after 1971, and that his failure to do so left Delia as the legal widow, entitled to benefits. The Appeals Council then refused to discuss the validity of the 1971 renunciation letter, stating that the Secretary's policy was not to recognize estoppel principles. This court again ordered the Secretary to make the required findings of fact on January 5, 1985, but this order was essentially ignored. On April 30, 1985, the court entered its order directing that the Secretary honor Josephine Ray's claim instead of Delia Swift's. As noted the April 30 order is modified so that it now only orders the Secretary, as a penalty, to honor Josephine Ray's claim.

## FINDINGS OF FACT

The central issue is whether Delia Swift validly renounced her claim to social security benefits as the legal widow of Edward Ray pursuant to the October 13, 1971 letter. The ALJ failed to make the necessary findings of fact on this issue. Accordingly, the court will now proceed based on the evidentiary record made before the ALJ to make the required findings.

First, the record demands a finding that Linda Swift Ray Pearson authored and signed her mother's name to the October 13, 1971 renunciation letter. An expert in handwriting analysis concluded that Mrs. Pearson probably signed her mother's name to the letter. This testimony is sufficient to meet Josephine Ray's burden of

proving that Mrs. Pearson more likely than not was the author. While a trier of fact might not equate "probably" with "more likely than not" were it hearing live testimony, this equation is the correct one where the testimony is written, stands alone as the only evidence on the point, and is from a clearly disinterested and credible source. The ALJ's discounting of the opinion because of the use of the word "probably" is not proper on the instant record.

Mrs. Swift did assert that her daughter did not write the letter. However, as mentioned previously, there is no foundation which explains that assertion. Furthermore, the exemplar of her daughter's signature which was used by the handwriting expert is the same exemplar which Mrs. Swift herself identified as looking similar to her daughter's signature. Finally, as discussed below, the court discredits Mrs. Swift's testimony.

Having determined that Mrs. Pearson signed the renunciation letter, the court now turns to examining the evidence relative to any authorization Mrs. Pearson may have had to prepare and sign such a letter on her mother's behalf. There is no direct evidence on this point. The parties had an opportunity to offer Mrs. Pearson's testimony, but chose not to. However, there is some evidence from which relevant inferences can be drawn which favor a finding of authorization. The consideration of these inferences, plus the utter absence of contrary credible evidence makes it more likely than not that Linda Pearson was authorized by Delia Swift to sign and deliver the letter to Edward Ray.

First, Linda Pearson is the daughter of Delia Swift. It is unspecified whether she is Rubin Swift's daughter,[3] but it is clear that she is not Edward Ray's daughter. Further, the record establishes that Mrs. Pearson did not attend Edward Ray's funeral, although she did accompany her mother to the funeral parlor the night before the funeral. The printed program for Edward Ray's funeral service lists the names of Edward Ray's immediate and extended family members, and does not mention Linda Swift Ray Pearson. From these facts it may be inferred that Linda Pearson had a community of interests with her mother Delia Swift but none with Edward Ray. It is not plausible that Linda Pearson would have prepared the letter secretly in derogation of her mother's interests. Rather, it is more likely that Mrs. Pearson prepared the letter on the express or implied authorization of Delia Swift. No evidence in the record rebuts the presumption that Linda Pearson would have acted with her mother's interests in mind.

The record does not contain a literal denial by Delia Swift that she expressly or implicitly authorized Linda Pearson to act for her in this manner. Whether by oversight or design, Mrs. Swift's testimony regarding the letter does not directly address the authorization point. When the letter was first brought up, she stated she had never seen it, that the handwriting was not hers, and that the signature was not hers. At the subsequent hearing after remand, she asserted that her daughter had not written the letter. The more relevant topics, namely, whether she and her daughter had ever discussed a request by Edward Ray that she renounce the benefits, and whether she had told her daughter to communicate with Edward Ray on this subject were never brought up.

If Mrs. Swift's limited testimony is taken to constitute a denial of Linda Pearson's authorization to act on her behalf, the record establishes abundant basis for discrediting it. In this regard, the ALJ made no credibility findings that are of assistance. Josephine Ray had no knowledge about the preparation of the renunciation letter. Delia Swift was the only witness who could have had such knowledge. The ALJ heard extensive testimony from Mrs. Swift, but made no credibility finding except to credit her testimony that she personally did not author or sign the letter. There is no indication whether the ALJ's determination in this regard was based on

---

**3.** Mrs. Swift probably continued to use the surname Ray between 1931 and 1943.

his observation of Mrs. Swift's demeanor or instead on the handwriting expert's opinion that Linda Pearson wrote the letter. Thus, this limited credibility finding by the ALJ does not bind the court in evaluating Mrs. Swift's testimony.

The better interpretation of the record reflects that Mrs. Swift testified falsely when she testified essentially that she had not misled Edward about her intention to divorce him by having him sign papers purporting to be divorce papers. The reason the court so concludes is that the testimony of this interested witness is contradicted by two documents in Edward Ray's social security file, one of which was more likely than not signed by Mrs. Swift herself. The memo signed by Mrs. Swift is substantially the same as the memo prepared by a Social Security employee in 1971, summarizing a telephone conversation with Mrs. Swift. Both of these forms constitute an acknowledgement by Mrs. Swift that she had misled Edward about the divorce and that he entered his marriage with Josephine in good faith.

Although the theoretical possibility always exists that official documents are fabricated, the present record reflects no basis for any such conclusion. The referenced documents stand as bona fide records of the Social Security Administration, prepared by or under the supervision of a person having no interest in the outcome of any dispute between Josephine Ray and Delia Swift. Based on this analysis, the court chooses to discredit Mrs. Swift's testimony denying the substance of the memoranda.

The aborted divorce attempt, and Edward's reasonable, albeit incorrect belief that he was a divorced man are subjects which a lay person would believe to be of great importance to the competing claims of Edward's two "widows." Thus, Mrs. Swift's fabricated testimony on this point cannot be set aside as irrelevant to the evaluation of her testimony as a whole. If she were willing to misrepresent these important facts, it is believable that she would misrepresent other important facts

as well. Accordingly, the court chooses to discredit her testimony in another important area, namely, whether she had any knowledge of the renunciation letter, or knowledge that her daughter gave Edward Ray a letter renouncing her claim to social security benefits.

For the foregoing reasons, the court concludes that: (1) Linda Pearson wrote the 1971 renunciation letter and signed her mother's name to it and (2) Linda Pearson acted with the express or implied authorization of Delia M. Swift in writing the letter and giving it to Edward Ray for presentation to the Social Security Administration.

This conclusion is also consistent with other testimony in the record. It is undisputed that around the time Josephine Ray got the letter from Edward, the issue of Josephine's entitlement to wife's benefits had arisen. The Social Security Administration had contacted Delia to try to resolve the matter. Delia had freely admitted to them that she misled Edward, and that he therefore married Josephine in good faith. The Social Security Administration had told the Rays to get a renunciation letter. Any subjective expectation on Delia's part of receiving benefits on Edward's account was remote at that time. It is easy to believe that Mrs. Swift would have agreed to give up any claim she might have under those circumstances. With the exception of Delia Swift's contrary testimony which has been rejected, all of the circumstances fit together to support Josephine's claim that Delia renounced her benefits. It is clear to the court that after Edward's death, Delia Swift simply changed her mind. Unfortunately, in the meantime, Josephine Ray had relied on being in a protected status based on the letter.

## CONCLUSIONS OF LAW

42 U.S.C. § 416(h)(1) provides two means by which a claimant can establish entitlement to social security benefits as the eligible "widow" of the deceased. Under subparagraph (A) thereof a claimant is entitled to benefits if she was legally married to the wage earner at the time of his death, or if

she would inherit as a common law widow under the intestacy statutes of the state in which the couple resided. Clearly, Josephine is not Edward Ray's legal widow, because O.C.G.A. § 19–3–2 provides that an undissolved marriage prevents the contracting of a subsequent legal marriage. Georgia's intestacy statute, O.C.G.A. § 53–4–1, *et seq.* similarly bars devolution of Edward Ray's property to Josephine.

The second means for establishing entitlement to widow's benefits is under 42 U.S.C. § 416(h)(1)(B). Subparagraph (B) provides that a claimant may be eligible for benefits as the wage earner's "deemed widow," notwithstanding the wage earner's prior undissolved marriage, if the claimant and wage earner had a marriage ceremony, the claimant entered the marriage in good faith, and the parties were living in the same household at the time of the wage earner's death. However, subparagraph (B) expressly provides that such a "deemed widow" cannot receive benefits if:

> ... another person is or has been entitled to a benefit ... and such other person is a widow ... of (the) insured individual under subsection (A) at the time such applicant files the application ...

There is no question about the fact that Josephine Ray is Edward Ray's "deemed widow" under subparagraph (B). The ALJ so found, and the court agrees with his conclusion.

The court further concludes, based on the findings of fact previously made in this order, that there is no legal widow of Edward Ray who is or has been entitled to benefits upon the filing of an application for same. Specifically, Delia Swift forfeited her right to benefits in 1971 and first applied for benefits in 1977. Therefore, Delia Swift has never been entitled to benefits, although the Social Security Administration apparently has been paying them to her over Josephine Ray's objection since 1977.[4]

There are two alternative legal theories as to why Delia Swift is not and has not been entitled since 1971 to any benefits on Edward Ray's account. Because the Secretary ignored the court's direction to make findings concerning the validity of the renunciation letter, neither theory has been addressed by the Secretary. First, Delia Swift is not entitled to benefits because she legally waived these benefits by giving Josephine Ray the 1971 renunciation letter. A waiver is an "intentional or voluntary relinquishment of a known right" as when "one in possession of any right, with full knowledge of the material facts, does ... something ... which is inconsistent with the right." Black's Law Dictionary 1417 (5th Ed.1979). A waiver may be found whenever there is a "renunciation, repudiation, abandonment or surrender of some claim, right or privilege." *Id.* Both the text of the 1971 letter and the other facts which have been established show that in 1971 Delia Swift was aware that there was an issue about whether she or Josephine Ray was entitled to benefits on Edward Ray's account. It is also clear that Mrs. Swift knew that her technically valid marriage to Edward was the source of the problem. The court concludes therefore that Delia Swift knowingly waived her claim.

Alternatively, Delia Swift is estopped to deny that she relinquished her claim to benefits in 1971. The doctrine of equitable estoppel precludes a party from claiming a right which might otherwise be available to him, against another party who detrimentally altered his position in reliance on the former's acts or representations. *See F.D.I.C. v. Harrison,* 735 F.2d 408, 410 (11th Cir.1984). Estoppel prevents a litigant from denying a representation previously made by him and accepted and reasonably acted upon by another party to his detriment. *Sabin Meyer Regional Sales Corp.*

---

**4.** Even if the Secretary's erroneous payment of benefits to Delia is deemed to have some legal significance, it is clear in this Circuit that the previous payment of benefits to a legal widow does not bar subsequent payments to a deemed widow. *Woodson v. Schweiker,* 656 F.2d 1169 (5th Cir.1981). That case being decided on September 25, 1981, it is binding precedent in the Eleventh Circuit under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

*v. Citizens Bank,* 502 F.Supp. 557, 560 (N.D.Ga.1980).

The 1971 letter certainly constituted a representation by Delia Swift that she would not oppose Josephine Ray's claim to Edward Ray's social security benefits. That representation was accepted by Josephine Ray. On balance, the court finds that Josephine's reliance on the letter as being sufficient to protect her rights was reasonable under all of the circumstances. Once Josephine had received the letter, it was presented to the Social Security Administration and thereafter she in fact started receiving benefits as Edward's wife. At the same point in time, Delia Swift made no claim for wife's benefits, even though it had been expressly called to her attention that Edward was taking early retirement. Although it would have been physically possible for Edward to obtain a divorce at some point between 1971 and 1974, any culpability Josephine may have had for this failure is mitigated by a number of circumstances. First, the court disagrees with the ALJ's finding that Josephine's fear of discredit being brought on the family by a belated divorce is not credible. Such belief does have a degree of credibility. Secondly, in the final analysis only Edward or Delia could file for the divorce; not Josephine. Third, and most importantly, the 1971 letter implied that Josephine's rights to the social security benefits were protected in any event.

The court rejects the ALJ's conclusion that Josephine's continuing to reside "in sin" with Edward after 1971 debars her from seeking equitable relief.[5]

In accordance with the foregoing discussion, the court finds that Josephine Ray is entitled to receive social security benefits as Edward Ray's deemed widow under 42 U.S.C. § 416(h)(1)(B), and the court further finds that Delia Swift is not and has never been entitled to receive benefits as Edward Ray's widow.

---

**5.** The court recognizes that in *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), the Supreme Court held that equitable estoppel cannot be asserted against the government in social security cases. There, an employee of the Social Security Administration had incorrectly advised an individual against claiming benefits; much later the individual reapplied, obtained benefits, and learned that he had been given the wrong information on the first occasion. He sought retroactive benefits, and the Secretary opposed the claim based on a regulation which precludes the award of retroactive benefits. The applicant's argument that the Secretary was estopped to assert the regulation was rejected by the Court.

*Schweiker* is irrelevant to the instant case. Here, equitable estoppel is asserted against a private litigant, not against the government.