**Richard D. HARRINGTON**

v.

**Peter MACNAB Suzanne Macnab Merrill Lynch, Pierce, Fenner & Smith, Inc.**

**Civil No. S 00–1563.**

United States District Court, D. Maryland.

Sept. 28, 2001.

Dale Stuart Betterton, Gebhardt and Smith LLP, Baltimore, MD, for Richard D. Harrington.

Harry M. Rifkin, Hodes Ulman Pessin and Katz, PA, Towson, MD, for Merrill Lynch.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is a diversity case before the Court on cross-motions for summary judgment. No oral hearing is needed. Local Rule 105.6 (D. Md.)

The plaintiff is an experienced attorney in practice on the Eastern Shore of Maryland. He conducted a settlement on a piece of property in Cambridge, Maryland, being purchased by a couple named the MacNabs. In plain English, the MacNabs bamboozled Mr. Harrington. When they showed up for the settlement without certified funds, but with a personal check drawn on their Merrill Lynch cash management account for $150,128.70, Mr. Harrington, instead of refusing to go forward with the settlement, phoned the Merrill Lynch office in Delaware where the NacNabs had their account. Taking the facts most favorably toward Mr. Harrington, he was told by a Ms. Ruark of Merrill Lynch, in response to his inquiry, that there were sufficient funds in the MacNabs' account to cover the check and that she would put a hold on the account in the amount of the check. When asked to confirm this in writing, Ms. Ruark sent a fax to Mr. Harrington as follows: "This letter is to verify that the funds are available in the Merrill Lynch account. There is a pend on the funds for the check that was given you." Although the parties dispute what a "pend" actually is and what Ms. Ruark meant (Merrill Lynch claiming she meant that the funds deposited to cover that check were themselves not yet cleared), the Court will adopt the view most favorable to Mr. Harrington, *viz.*, that Merrill Lynch represented that a hold would be placed on the MacNabs' account to cover the check in question. In fact, the Mac-Nabs' account did not contain sufficient cleared funds to cover the check, which bounced. Subsequent promises by the MacNabs to make the check good came to naught. Although Mr. Harrington eventually obtained a judgment against the Mac-Nabs in this case, it has not been satisfied in full. Thus, he pursues a claim of negligent misrepresentation against Merrill Lynch on account of Ms. Ruark's statements.

Even under the view of the facts most favorable to Mr. Harrington, the cause of action sought to be asserted here (negligent misrepresentation) does not, as a matter of Maryland law, create a viable claim in Mr. Harrington's favor, for reasons to be set forth below.

There are no reported cases in Maryland in which a payee on a check has recovered against the drawee (or one, like Merrill Lynch, in the position of a drawee) for a negligent statement that there were sufficient (cleared) funds in the drawee's account to cover the check, and/or that a "hold" would correspondingly be placed on the account. Thus, this Court must predict how the Maryland Court of Appeals would view the issue. *See, e.g., Wilson v. Ford Motor Co.,* 656 F.2d 960, 960 (4th Cir.1981).

Although there is authority from other jurisdictions recognizing liability in similar cases, this Court is of the opinion that the Court of Appeals of Maryland would not recognize a cause of action on these facts. That Court has been careful, in cases of negligent misrepresentation resulting in economic loss, to confine the tort claim to situations where the giver and the recipient of the negligently-made misrepresentation or promise have an "intimate nexus," such as an employee-employer relationship (even a prospective one), or contractual privity or its equivalent. *Griesi v.*

*Atl. Gen. Hosp. Corp.*, 360 Md. 1, 12–13, 756 A.2d 548, 554 (2000). Although the plaintiff relies, in part, on certain broad statements of legal policy in *Walpert, Smullian & Blumenthal v. Katz*, 361 Md. 645, 762 A.2d 582 (2000), this Court does not read that case as having in any way abrogated the "intimate nexus" test, but simply as having elaborated on that test in the context of the connection between an accounting firm and one who relies on that firm's assessment of its client's financial situation—an assessment that is only arrived at after excruciating audit and other procedures have been applied by experts in finance. Such is plainly not the case here.

■ Here, given settled law, there is simply no contractual privity or its equivalent between Mr. Harrington and Merrill Lynch, which was in a position equivalent to that of the drawee on the MacNabs' check (a check is a species of draft, *see Md.Code Ann.*, Com. Law I § 3–104(f)(1997)), nor can any argument be made that Mr. Harrington was a third-party beneficiary of the MacNab–Merrill Lynch cash management account agreement, any more than the Baltimore Gas and Electric Company is, by virtue of the fact that I draw it a check to cover my utility bill, the third party beneficiary of my checking-account contract with my bank.

That is, to hold that an "intimate nexus" relationship existed in this case would lead to the result that any payee on a check who makes inquiry is in the equivalent of contractual privity with the drawee, a proposition that would place substantial and potentially unlimited liability on drawees for uncertified checks, in contravention of the basic policies underlying the checking system in the United States as codified in the Uniform Commercial Code. For example, U.C.C. § 3–408 specifically provides that a drawee is not liable as an assignee of the drawer on a check. Even more to the point, a drawee has no contract liability on a check to a payee unless and until it has accepted the check, *viz.*, certified it. *See* U.C.C. §§ 3–408 and 3–409 (2001). Acceptance requires, as it has since Lord Mansfield's day, the formality of the drawee's signature on the check. *See id.* § 3–409(a); *Md.Code Ann.*, Com. Law I § 3–409(a). To be sure, Official Comment 1 to U.C.C. § 3–408 recognizes that, under general principles of law, a drawee might otherwise have liability to a payee (or others), even in the absence of acceptance of a draft. Such liability has been imposed under various theories, such as promissory estoppel, but imposing it in tort must be consonant with the general law of the jurisdiction, which, in this case, and for good reason, requires the kind of special commercial relationship that is simply absent in the case of the payee and the drawee on a check.

To recognize a cause of action under the circumstances of this case essentially would create a tort remedy allowing suit to be brought for oral certification of checks, in clear violation of the policies of the Commercial Code and hundreds of years of commercial law. *See Sabin Meyer Reg'l Sales Corp. v. Citizens Bank*, 502 F.Supp. 557, 558–59 (N.D.Ga.1980), *cited with approval in W.B. Farms v. Fremont Nat'l Bank & Trust Co.*, 756 F.2d 663, 666–67 (8th Cir.1985). For these reasons, this Court is firmly of the opinion that the Court of Appeals of Maryland would not here find the requisite "intimate nexus" to sustain the plaintiff's sole claim of negligent misrepresentation.

■ Furthermore, even in a case where there is an intimate nexus established, one's reliance on an oral (or even a written) representation that funds are available or even held to cover an ordinary

**586**

check must have been "justifiable," *see Griesi*, 360 Md. at 11, 756 A.2d at 553, which obviously means more than "can be rationalized *post hoc*." It can hardly be claimed that reliance by an experienced real estate attorney on the statements in this case in lieu of adhering to the sound practice of requiring the buyer to pay with an accepted draft (certified check) or a bank draft is justifiable. Indeed, the reason for the practice of requiring certified or bank checks is that, in the eyes of the U.C.C., such instruments are the equivalent of cash as far as satisfying the underlying obligation goes. *See* U.C.C. § 3–310(a).

Accordingly, an Order will be entered separately, denying the plaintiff's motion for summary judgment on the remaining claim against defendant Merrill Lynch, granting Merrill Lynch's motion for summary judgment, and closing this case.

### ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum Opinion, it is, this 28th day of September 2001, by the Court, ORDERED and ADJUDGED:

1. That the plaintiff's Motion for Summary Judgment on the remaining claim against defendant Merrill Lynch, BE, and it hereby IS, DENIED;

2. That the defendant Merrill Lynch's Motion for Summary Judgment BE, and it hereby IS, GRANTED;

3. That Judgment BE, and it hereby IS, ENTERED in favor of defendant Merrill Lynch, against plaintiff, with each side to bear its own costs;

4. That this case BE, and it hereby IS, CLOSED; and

5. That the Clerk of Court provide copies of this Judgment Order and of the foregoing Memorandum Opinion to counsel for the parties.